FILED
Sep 25, 2018
01:21 PM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | |
|---|---|
| **Velvet Touchette,** | ) Docket No.: 2018-05-0417 |
| **Employee,** | ) |
| **v.** | ) |
| | ) |
| **Speedway, LLC,** | ) State File No.: 95598-2017 |
| **Employer,** | ) |
| **And** | ) |
| | ) |
| **Old Republic Ins. Co.** | ) |
| **Insurer.** | ) **Judge Robert Durham** |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

---

This case came before the Court for an Expedited Hearing on September 17, 2018. The legal issue is whether Ms. Touchette's chest and left shoulder complaints arose primarily out of and in the course and scope of her employment with Speedway. For the following reasons, the Court holds she is likely to succeed at a hearing on the merits in establishing entitlement to a panel. Because Speedway denied her claim, the Court holds it must authorize reasonable and necessary treatment for the work injury with an orthopedist at Seven Springs Orthopedics.

### History of Claim

On December 2, 2017, Ms. Touchette worked as an assistant manager trainee for Speedway. While restocking the coffee station, she noticed an urn was not working.[1] She began checking if one was unplugged. This included checking an outlet underneath the coffee counter in the back of a storage cabinet by bracing herself with her left arm, stooping down, and reaching through the open door to the back of the deep cabinet where the outlet was located. At the hearing, Ms. Touchette stated that she reached into the back of the cabinet, grabbed a tight plug and attempted to work it free of the outlet when

---

[1] In her early accounts, Ms. Touchette stated she transported a heavy box to the coffee station; however, at the hearing, she admitted that she transported the box several minutes before she experienced chest pain.

she felt a sudden, excruciating pain in the left side of her chest radiating to her left shoulder.[2]

A co-worker, Keonna Sebree, found Ms. Touchette lying on the floor, clutching her chest in intense pain. Surveillance footage shows Ms. Sebree assisting her to the office. Ms. Touchette's left hand was on her chest. An ambulance transported her to the emergency room where Ms. Touchette complained of "pleuritic, sharp" chest pain exacerbated by movement and chest palpation. The ER doctor ruled out heart problems and diagnosed Ms. Touchette with acute costochondritis, or inflammation of the chest wall muscles.

The next day, she completed an injury report for Speedway. Ms. Touchette wrote she experienced sharp pain in the middle of her chest when she was "bending down and into cabinet to check plug connection." She made no mention of pulling on a plug. Speedway did not provide a panel of physicians.

On December 4, Ms. Touchette visited her primary care physician, Dr. Olawumi Akatue. Ms. Touchette reported chest pain "after she had lifted some boxes and then reached for a cabinet to pull an item," and that she still had chest pain and pain lifting her arms. Dr. Akatue diagnosed a chest muscle strain/musculoskeletal pain and assigned restrictions. Ms. Touchette returned a week later for an "upper ext/shoulder/chest sprain after she did some pulling at work." Dr. Akatue noted pain to the right of the sternum and toward both shoulders. She diagnosed a lingering muscle strain and recommended Ms. Touchette take "a few days off work."

She returned to Dr. Akatue the next week, this time with a case manager. Ms. Touchette stated the right-sided pain improved, but she still had pain, decreased range of motion and occasional numbness and tingling in her left shoulder and arm. Dr. Akatue ordered x-rays, which were negative, and made an orthopedic referral. She did not mention work restrictions then; however, at the next visit she stated that since Ms. Touchette told her Speedway did not have light duty, she could stay off work until she saw an orthopedist.

Ms. Touchette testified she spoke to the adjuster for Speedway about the referral, and he told her that she could go to any orthopedist. Speedway did not refute this. She stated she then attempted to contact the adjuster several times to confirm scheduling, but he did not return her calls. She did not hear from him until Speedway denied her claim.

Afterward, Ms. Touchette sought unauthorized treatment at Seven Springs

---

[2] Ms. Touchette's testimony differs from the various written accounts of the incident that were made before the hearing. Given the emphasis placed on this difference at the hearing, the Court believes it will be instructive to detail the prior accounts.

Orthopedics.[3] Brad Bell, PA-C, noted that "per her history, she was reaching awkwardly beneath the counter and felt something strain in the left side of her chest" with most of the pain since migrating to her left shoulder. PA Bell noted ROM limitations and give-way weakness due to complaints of pain in the left shoulder and left chest wall. He gave her a steroid injection in her shoulder, recommended a left shoulder MRI and kept her off work until after the MRI.

Following this initial visit, Ms. Touchette underwent a variety of tests and treatments. She experienced no relief from steroid injections, pain medicine, muscle relaxants or physical therapy. A left shoulder MRI did not provide an explanation for her symptoms.

Ms. Touchette sought a second opinion from Charles Cassidy, PA-C with Sport Ortho Urgent Care. She told him her injury occurred as she was reaching into a cabinet with her right arm with her left arm resting in a flexed, abducted position on the counter. A chest MRI and a cardiology work-up did not reveal any problems. Ms. Touchette then saw a neurologist and underwent a nerve conduction study of her left arm, which also did not show any abnormalities that might explain her pain.

Ms. Touchette filed a Petition for Benefit Determination (PBD) with the Bureau on April 18. In the attached, hand-written affidavit, she described the December 2 incident, stating she felt intense pain when she "opened the cabinet door, bent down with my left hand on the (blank) and started to reach into the cabinet with my right."

Afterward, Speedway authorized an orthopedic evaluation with Dr. Joseph Weick. Ms. Touchette stated her pain began as "she was reaching under a desk with her right hand while she had her left hand holding a table top." He reported his examination was frustrated by Ms. Touchette's refusal to move her left arm due to pain complaints. Dr. Weick concluded there was nothing more to offer her and placed her at maximum medical improvement with a three-percent impairment to the upper extremity due to shoulder pain.

Ms. Touchette testified she still has excruciating pain that radiates from the left side of her chest to her left shoulder any time she moves her left arm. She stated the pain is sometimes so severe it causes her to vomit. She asserted she did not have any problems with her left shoulder or chest before December 2, 2017. She returned to Seven Springs following Dr. Weick's evaluation, and PA Bell recommended a shoulder MRI with contrast.

## Findings of Fact and Conclusions of Law

---

[3] Ms. Touchette has only seen physician's assistants at Seven Springs, although orthopedists signed the records.

Ms. Touchette does not have to prove every element of her claim by a preponderance of the evidence to obtain relief at an expedited hearing. Instead, she must present sufficient evidence that she is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2017); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

Before turning to the merits of Ms. Touchette's claim, the Court must first address her credibility as to her testimony about the December 2 incident. She testified that she felt intense pain in her chest after reaching to the back of the cabinet and pulling a tight plug from its outlet. Perhaps this was in response to Speedway's assertion that an injury caused by mere reaching is idiopathic. In contrast, at least five written statements, two of which are in Ms. Touchette's own handwriting, provided different accounts. With minor variations, the written statements indicated that Ms. Touchette's pain began while bending down and reaching toward the back of the cabinet with her right arm while her left arm was braced on top of the counter. None mentioned that she felt pain only after pulling on a tight plug, even though some, like her affidavit, were very detailed.

Ms. Touchette attempted to explain this inconsistency, but her explanations are unpersuasive. Given the overwhelming weight of contrary evidence, the Court finds that her testimony about her pain starting when she was pulling on a plug is not credible, and that the incident occurred as recorded in the written accounts. Further, the Court finds Ms. Touchette's lack of credibility to be troubling. By demonstrating a willingness to change her story in an attempt to avoid Speedway's defense, she makes all of her testimony suspect. The Court strongly admonishes her against doing so again. Nevertheless, the written accounts contain sufficient detail to allow the Court to consider her claim based on them. *See Lewis v. Molly Maid*, 2016 TN Wrk. Comp. App. Bd. LEXIS 19, at *8 (Apr. 20, 2016) (trial court did not err in ruling in favor of employee, despite questions regarding employee's credibility, when other evidence supported employee's position.).

The primary issue here is causation. To prevail, Ms. Touchette must establish she is likely to prove she suffered an accidental injury that was "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(14)(A). No one disputes that her pain began in the course and scope of her employment with Speedway. However, she must also establish that her complaints arose primarily out of her employment. On this point, Speedway argued Ms. Touchette's claim must fail because her injury is idiopathic.

"An idiopathic injury is one that has an unexplained origin or cause, and generally does not arise out of the employment unless some condition of the employment presents a peculiar or additional hazard." *McCaffery v. Cardinal Logistics*, 2015 TN Wrk. Comp.

4

App. Bd. LEXIS 50, at *9 (Dec. 10, 2015) (citations omitted). An idiopathic injury is only compensable if the "accident originated in the hazards to which the employee was exposed as a result of performing his job duties." *Id.* at *10. Speedway argued that, much like rising from a squatting position, simply reaching out does not constitute a condition of employment presenting a peculiar or additional hazard. *See Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd., LEXIS 42, at *18 (Nov. 9, 2015)(employee who injured his knee while rising from a squatting position did not suffer a compensable injury.).

An injury caused by reaching out one's arm might constitute an idiopathic injury under certain circumstances; however, the Court finds that is not the case here. Ms. Touchette was not simply reaching out; she was bent over a low cabinet, her left hand bracing her body on the counter while she stretched toward the back of the cabinet with her right hand to reach an outlet. Her body was in an extremely awkward position while performing her job by checking the outlets. Thus, the Court holds that Ms. Touchette's December 2 injury arose out of a "peculiar or additional hazard" of her employment and was not idiopathic.

The Court also disagrees with Speedway's argument that it should be excused from providing medical care because Ms. Touchette's tests were negative. According to her unrefuted testimony, she currently treats with Seven Stones Orthopedics, which recommended a left shoulder MRI with contrast. The fact that no doctor discovered the source of Ms. Touchette's complaints does not eliminate her need for treatment or Speedway's obligation to provide it.

However, the Court agrees with Speedway that Ms. Touchette has yet to show she is likely to prove causation, given that there is no medical opinion on this issue. To establish causation, a physician must give an opinion that states "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C).

At this time, Ms. Touchette has not introduced a doctor's opinion providing medical causation for her current complaints or that establishes that her medical expenses were reasonable and necessary for treatment of her work-related injury. Further, she has not submitted any medical evidence establishing that a work-related injury left her temporarily disabled. However, this does not excuse Speedway from its obligation to provide an authorized physician to determine if Ms. Touchette sustained a compensable injury that requires treatment. The Court holds that while Ms. Touchette has yet to prove she is likely to prevail in establishing compensability, she has shown she is likely to prove entitlement to a panel for her asserted injury. *See Lewis,* at *9.

However, rather than provide a panel of physicians as required by Tennessee Code

Annotated section 50-6-204(3)(A)(i), Speedway allowed Ms. Touchette to seek initial treatment from the emergency room and then from Dr. Akatue. Speedway even sent a case manager with her to Dr. Akatue. When Dr. Akatue recommended an orthopedic referral, Speedway denied the claim without offering a panel. Thus, Ms. Touchette was compelled to seek unauthorized treatment. Whether an employee is justified in seeking payment for unauthorized medical expenses from an employer depends upon the circumstances. *Hackney v. Integrity Staffing Solutions,* 2016 TN Wrk. Comp. App. Bd. LEXIS 29, at *8-9 (July 22, 2016).

Here, the Court finds the circumstances justified Ms. Touchette's unauthorized care. AThe Court also finds that, since it failed to provide a panel, Speedway does not have right to do so now. "An employer may risk being required to pay for unauthorized treatment if it does not provide the treatment made reasonably necessary by the work injury as required by Tennessee Code Annotated section 50-6-204(a)(1)(A)." *See Hackney v. Integrity Staffing Solutions,* 2016 TN Wrk. Comp. App. Bd. LEXIS 29, at *8-9 (July 22, 2016).

Because Speedway denied Ms. Touchette a panel, and based on her unrefuted testimony that she currently treats with Seven Springs, the Court holds that Speedway shall designate an orthopedist there as the authorized physician.[4]

IT IS, THEREFORE, ORDERED that:

1. Speedway shall authorize an orthopedist with Seven Springs Orthopedics for medical treatment under Tennessee Code Annotated section 50-6-204.

2. Ms. Touchette's request for payment of medical bills and temporary disability benefits is denied at this time.

3. This matter is set for a Scheduling Hearing on November 7, 2018, at 9:30 a.m. C.S.T. The parties or their counsel must call 615-253-0010 or toll-free at 855-689-9049 to participate in the hearing. Failure to call may result in a determination of the issues without your participation.

**ENTERED THIS THE 25th DAY OF SEPTEMBER, 2018.**

---

[4] Ms. Touchette expressed the desire that PA Bell be designated as her authorized physician. Since he is not a medical doctor, he cannot be an authorized treating physician because he is not qualified to make expert medical opinions. However, there is no such limitation on the orthopedists who are also part of Seven Springs Orthopedics.

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

## APPENDIX

Technical Record

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Notice of Expedited Hearing
5. Notice for Discovery
6. Amended Order Denying Witness' Appearance by Telephone
7. Employer's Expedited Hearing Brief

Exhibits

1. Employer's Exhibit List with Attached Exhibits
2. Mr. Touchette's affidavit
3. Stonecrest PT records
4. Medical records submitted by Ms. Touchette
5. Speedway Injury Report

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent to the following recipients by the following methods of service on September 25, 2018.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Velvet Touchette | X | | X | 220 Indian Lake Dr., Apt. 3902 Murfreesboro, TN 37128 |
| J. Allen Callison | | | X | Allen.callison@mgclaw.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**

7



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1.  Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3.  You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4.  If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**Filed Date Stamp Here**

**EXPEDITED HEARING NOTICE OF APPEAL**
Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

RFA #: _____

Date of Injury: _____

SSN: _____

_____
**Employee**

_____
**Employer and Carrier**

### Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____to the Workers' Compensation Appeals Board.

[List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

### Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

### Additional Information
**Type of Case** [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

### List of Parties
**Appellant (Requesting Party):**_____At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

LB-1099   rev.4/15                          Page 1 of 2                          RDA 11082

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)

**Appellee (Opposing Party):** _____ At Hearing: ☐Employer ☐Employee

Appellee's Address: _____

Appellee's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I,_____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the_____day of_____, 20___.

[Signature of appellant or attorney for appellant] _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived.  The following facts support my poverty.

1. Full Name:_____  2. Address: _____

3. Telephone Number: _____  4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____  Relationship: _____

_____  Relationship: _____

_____  Relationship: _____

_____  Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ | per month | beginning _____ |
| SSI | $ _____ | per month | beginning _____ |
| Retirement | $ _____ | per month | beginning _____ |
| Disability | $ _____ | per month | beginning _____ |
| Unemployment | $ _____ | per month | beginning _____ |
| Worker's Comp. | $ _____ | per month | beginning _____ |
| Other | $ _____ | per month | beginning _____ |

LB-1108 (REV 11/15)                                                                                   RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month     Medical/Dental  $ _____ per month

Groceries      $ _____ per month      Telephone      $ _____ per month

Electricity      $ _____ per month      School Supplies $ _____ per month

Water      $ _____ per month      Clothing      $ _____ per month

Gas      $ _____ per month      Child Care      $ _____ per month

Transportation   $ _____ per month      Child Support      $ _____ per month

Car      $_____ per month

Other      $ _____ per month (describe: _____ )

10. Assets:

Automobile      $ _____      (FMV) _____

Checking/Savings Acct. $ _____

House      $ _____      (FMV) _____

Other      $ _____      Describe:_____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)                                                         RDA 11082